VICKERY (UNITED STATES v.). See Case No. 16,619.

## Case No. 16,931.

### The VICKSBURG.

[3 Ben. 298.] [1]

District Court, S. D. New York. June, 1869.[2]

COLLISION IN EAST RIVER—STEAMER AND LIGHTER —CROWDED RIVER.

1. A lighter, loaded with casks of oil, was beating down the East river, which was crowded with vessels, the wind being southwest, and the lighter being on her port tack, and a steamer, coming up the river, saw the lighter before she came on that tack, and, on seeing her come about upon that tack, slowed her engine, and afterwards stopped it, but did not reverse it or change her course, and struck the lighter on the bluff of her port bow. *Held*, that the fault of the collision was with the steamer, in plunging into the crowd of vessels, taking her chance of finding an opening through them.

2. The lighter was entitled to keep her course, and did so, and did nothing to embarrass the steamer, and was not in fault.

In admiralty.

Oscar Frisbie, for libellants.

Vose & McDaniel, for claimants.

This decision was affirmed by the circuit court, on appeal. [Case No. 16,932.]

## Case No. 16,932.

### The VICKSBURG.

[7 Blatchf. 216.] [1]

Circuit Court, S. D. New York. April 23, 1870.[2]

COLLISION — SCHOONER AND STEAMER — BEATING OUT TACK—DAMAGES—EVIDENCE OF VALUE—ADMIRALTY APPEALS.

1. Where a schooner was crossing the course of a steamer, towards the port side of the steamer, and the steamer starboarded her helm, *held*, that the steamer was in fault.

[Cited in McWilliams v. The Vim, 12 Fed. 913.]

2. Where a vessel is tacking in a river or a narrow channel, a vessel approaching her under the pressure of an obligation to avoid her, has, in general, the right to assume that she will beat out her tack; but this assumption must yield to peculiar exigencies.

3. Where a vessel is injured by a collision, and the sum expended to repair her is claimed as damages, it is not competent to show how much her cost was to her owner four years before, as evidence tending to prove that, at the time of the collision, she was not worth as much as such sum.

4. It is not competent, on an appeal in admiralty, to ask this court to send the case back to the commissioner, on the ground that he rejected evidence offered before him, on the reference in the district court as to damages, where the question as to the rejection of such evidence was not raised in the district court.

[Appeal from the district court of the United States for the Southern district of New York.]

In admiralty.

Oscar Frisbie, for libellants.

Everett P. Wheeler, for claimants.

WOODRUFF, Circuit Judge. The outline of uncontested facts disclosed by the testimony in this case is, that the schooner G. A. Graves, of which the libellants were owners, was, at about five o'clock in the afternoon of the 5th of December, 1867, sailing down the East river, with a head wind, bound for a pier in New York, between the Catherine Street Ferry and the Fulton Street Ferry. Her progress was necessarily made by tacking. When on her tack towards the Brooklyn shore, another vessel was running on the same tack, about 100

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 16,932.]

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Affirming Case No. 16,931.]

feet off from her port side, and a little ahead of her. When this vessel had reached a point near to the Brooklyn shore, both of them tacked at or about the same moment, which brought the G. A. Graves on a course nearly across the river towards New York, closehauled on the wind, with the other vessel in her wake. The steamer Vicksburg, having come around the Battery into the East river, was steaming up near the centre of the river, or a little the nearest to the Brooklyn side, and, when at a distance below the G. A. Graves, variously estimated by the witnesses at from 800 to 1300 feet, saw the G. A. Graves tack, to take her direction across the river towards the New York shore. The steamer slowed her engine, put her helm to starboard, and then stopped her engine. This had the effect, in some degree, to retard her speed, and was a plain endeavor to cross the bows of the schooner, which was closehauled on the wind. A collision ensued, the schooner was injured, and her owners claim damages.

I do not deem it necessary to recapitulate or discuss the evidence in detail. It is voluminous, and I have examined it with care, and am unable to resist the conclusion that the Vicksburg was greatly in fault. The chief conflict is in the testimony relating to the number of craft of various kinds which were then in the East river, all of which the Vicksburg was bound to avoid by diligence and skill, and to their location and course in the river. If the account in that respect given by the witnesses for the libellants be taken, then it was the plain duty of the Vicksburg, when she saw the schooner tack, not to put her helm a-starboard and attempt to cross the schooner's bows, but to port her helm and pass astern. The reason for not doing so, assigned by the witness for the claimants, that she would then have been in danger of hitting the other vessel in the wake of the G. A. Graves, may tend to show that the Vicksburg should not have attempted to pass at all at that moment, but it did not justify the movement she did make, to cross the bow of the schooner. On the other hand, if the account given by the claimants' witnesses be taken, then the river was so crowded with vessels on either side, that the Vicksburg was culpably negligent in approaching them at such speed that she could not or did not so control her motion as to avoid them. The obligation rested upon her to avoid the schooner; and, if the latter was not in fault, that obligation was violated. She could have reversed her engine, and, if that would have had the effect which the claimants' witnesses state, namely, to throw her bow to starboard across the stream, it would have avoided the schooner, unless too long delayed. And, in this explanation of the effect of reversing the motion of the propeller, no doubt lies the reason why the pilot attempted to force her way across the bow of the schooner, namely, she would lose time, and her headway would be lost. He might better have followed the example of the ferry boat which was at that moment lying two hundred

feet up the river, waiting for an opportunity to pass these vessels with safety to both.

Nevertheless, if the schooner was also in fault, the burden of the loss cannot rest on the owners of the Vicksburg alone. It is, therefore, insisted, that the schooner did not beat out her tack, as she was bound to do, and that it was her premature tacking toward the New York side that placed her in danger and prevented the success of the endeavor of the Vicksburg to cross her bow. Doubtless, when a vessel is tacking in a river or a narrow channel, a vessel approaching her under the pressure of an obligation to avoid her, has, in general, the right to assume that she will beat out her tack. Such approaching vessel must have some guide by which to anticipate and guard against the movements of the other. But this assumption, like all general rules of navigation, must yield to peculiar exigencies. In this case, there are two considerations which must defeat this claim in behalf of the Vicksburg: (1) She saw the schooner change her course and start on her way across the river towards New York, in season to avoid her. I am aware that this is denied, but, in my judgment, the testimony establishes it. (2) I am satisfied that the schooner could not have continued on her tack towards Brooklyn longer than she did, without imminent danger of collision with the other vessel, which was on the like tack, between her and the shore. The other vessel was compelled to tack when she did, and the weight of the evidence shows, I think, that it was necessary, for the G. A. Graves to tack at or about the same time, to prevent their coming together. If the Vicksburg did not see this precise condition of the two schooners, she did see them both, saw the movement, and should have avoided them.

I am satisfied, in view of all the evidence, that the loss caused by the collision was properly charged upon the Vicksburg.

The claimants further insist, that, if the Vicksburg is to be held liable for all the loss, still the case should be referred back to the commissioner, because he refused to permit them to show how much the schooner cost the libellants four years before this collision. This they claim to be proper, because it might, by that evidence, have appeared that the schooner was, at the time of the collision, not worth so much as the sum allowed as damages. I think that the enquiry was properly excluded. The time of the purchase of the schooner and the fact sought to be proved are too remote from the time and circumstances of the collision to warrant any such inference. The libellants had a right to repair the schooner so as to make her as good as she was before—certainly, unless the cost of repairing her would exceed her value at the time of the collision. To prove that value, her cost in 1863 to the libellants was too remote.

Besides, no exception was taken before the commissioner to the rejection of this evidence, no exception on that ground was presented to the district court, and I do not understand that

it is competent to ask this court, on the appeal, to send back the case to the commissioner upon a question not in due form raised below. [See Case No. 16,931.]

This last observation applies with even more force to the claim that the commissioner allowed too much for the new mast and for repairing the sails. No question appears to have been raised before the commissioner that these were overcharged, and no exception to these charges in his report was taken in the district court. The decree must be affirmed, with costs.